## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ANDERSON DIVISION

| | | |
|---|---|---|
| Ron Teria Nicholas, | ) | Civil Action No. 8:04-22471-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| Jon E. Ozmint, S.C.D.C. Director; | ) | |
| NFN Houser, Chaplain at Kirkland C.I.; | ) | |
| Bernard McKie; Vaughn Jackson; | ) | |
| Gary Boyd; Betsy Lybrand; and | ) | |
| Doris Cureton, | ) | |
| | ) | |
| Defendants. | ) | |

The plaintiff filed this action on October 7, 2004, against the defendants, the Director and other employees of the South Carolina Department of Corrections ("SCDC"), seeking damages and injunctive relief for alleged constitutional and statutory violations. Specifically, the plaintiff, who is currently housed in the Maximum Security Unit ("MSU")[1] at Kirkland Correctional Institute ("KCI"), alleges in his amended complaint that the defendants "created a blanket-ban on all prisoners' correspondence containing any religious books and/or literature" and that the "blanket-ban substantially burdens his

---

[1] An affidavit submitted by the defendants of Bernard McKie, the Warden of KCI, explained the purpose of MSU at Kirkland to be:

> The MSU is a specialized housing unit for inmates who have demonstrated an unwillingness to conform to the rules and regulations of a Special Management Unit, who have been charged with violent criminal behavior committed while in the general population, and/or for whom emergency placement has been ordered by the Agency Director or the Deputy Director for Operations.

(McKie aff. ¶ 3). Mr. McKie also states in his affidavit that the plaintiff was placed in MSU in January 2004, as a result of his participation in a hostage taking and riot at the Broad River Correctional Institute on January 15, 2004. (McKie aff. ¶ 7).

religious faith as he has no other reasonable means of obtaining the religious material that comports with his religious faith."

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bruce H. Hendricks, for pretrial handling.  On March 14, 2005, the defendants filed a motion for summary judgment.  Because the plaintiff is proceeding *pro se*, he was informed on March 15, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), of the possible consequences if he failed to adequately respond.  The plaintiff filed a response in opposition to the motion for summary judgment on April 19, 2005.

On February 8, 2006, the Magistrate Judge filed a detailed and comprehensive Report and Recommendation.  In the Report, after analyzing the applicable law and the plaintiff's allegations, the Magistrate Judge recommends to this court that the defendants' motion for summary judgment be granted.  The plaintiff filed objections to the Magistrate Judge's Report and Recommendation on February 16, 2006.

The Magistrate Judge only makes a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Matthews v. Weber, 423 U.S. 261, 270-71 (1976).  The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).  In the absence of objections to the Report and Recommendation, this court is not required to give any explanation for adopting the recommendation.  Camby v. Davis**,** 718 F.2d 198, 199 (4th Cir. 1983).

**Discussion**

As stated above, the plaintiff filed objections to the Magistrate Judge's Report and Recommendation. They are as follows:

**First Amendment Claim**

The Magistrate Judge points out in the Report that the plaintiff argues that he is asserting a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), rather than the First Amendment. However, the Magistrate Judge notes that other than briefly citing the RLUIPA in his preliminary statement and in the prayer for damages, the plaintiff does not otherwise mention the statute in his amended complaint. The Magistrate Judge correctly notes that in the factual section of the amended complaint, the plaintiff clearly states that he is "assert[ing] a violation of his 1st amend. rights under the free exercise clause." As such, the Magistrate Judge concludes in the Report that it appears that the plaintiff is claiming a violation of his First Amendment right to the free exercise of religion. The Magistrate Judge concludes that in light of the fact that the plaintiff is proceeding *pro se,* she will address both the alleged constitutional and statutory violations in her Report and Recommendation.

It appears to this court that the plaintiff's first objection to the Magistrate Judge's Report is that the Magistrate Judge addressed a First Amendment claim in the Report. The Plaintiff argues that it is the RLUIPA that governs this claim and that he is not asserting a First Amendment claim.

This court concurs with the Magistrate Judge that in the factual section of the plaintiff's amended complaint, he does not mention the RLUIPA at all. Likewise, contrary to the plaintiff's assertions otherwise, it appears that the plaintiff is asserting a violation of his First Amendment rights in the amended complaint. The plaintiff argues in his objections, as he did in his response to the defendants' motion for summary judgment, that he is not asserting a First Amendment claim, and is

only bringing a claim under RLUIPA. Therefore, this court will not further address a First Amendment claim, as the court finds the Magistrate Judge has adequately addressed the applicable law and has reached a sound and well reasoned conclusion. Plaintiff has no further objections to the Magistrate Judge's analysis of this section, other than it does not apply to his case. Therefore, this court will adopt the Magistrate Judge's analysis of the plaintiff's First Amendment claim into this Order in its entirety.

### RLUIPA

The plaintiff argues that he is asserting a claim under the RLUIPA, a law passed by Congress in 2000. Section 3 of RLUIPA prohibits governments from enacting regulations, including rules of general applicability, or otherwise taking actions that impose a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that imposition of that burden furthers "a compelling governmental interest" by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). This strict-scrutiny standard applies anytime such a burden on religious exercise occurs "in a program or activity that receives Federal financial assistance," or "affects, or removal of that substantial burden would affect," interstate or foreign commerce. Id. The statute creates a private cause of action for persons who allege that a government has substantially burdened their religious conduct. 42 U.S.C. § 2000cc-2(a).

However, the RLUIPA employs an explicit burden-shifting mechanism and the plaintiff bears the burden of persuasion on whether the challenged law places a *substantial burden* on his exercise of religious beliefs. If the plaintiff proves this threshold issue, the government program must then prove that the imposition of the burden furthers a compelling interest by the least restrictive means. 42 U.S.C. § 2000cc-2(b).

Recently, the Supreme Court held that even under RLUIPA's strict scrutiny standard, district

courts are admonished to defer to prison officials' expertise in striking the appropriate balance between inmates' religious needs and the prisons' compelling interests and are authorized to take costs and limited resources into consideration. Cutter v. Wilkinson, 125 S.Ct. 2113, 2123 (2005). The Court in Cutter stated

> Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. See, *e.g.*,139 Cong. Rec. 26190 (1993) (remarks of Senator Hatch). They anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Joint Statement S7775 (quoting S.Rep. No. 103-111, p. 10 (1993)).

Id.

In the Report, the Magistrate Judge concludes that in this case the plaintiff has not shown that the restrictions in question impose a substantial burden on his religious exercise. The Magistrate Judge notes that the plaintiff alleges that he has been deprived of access to unspecified religious literature, however, other than his conclusory allegations, there is no indication that the plaintiff has been denied all religious texts or that there is a "blanket-ban on all religious books." In fact, the Magistrate Judge finds that under the policy at issue, MSU inmates are allowed the central book of their faith and may possess any other books in numbers appropriate to their classification level. The Magistrate Judge concludes that the challenged provisions of the prison regulations are content neutral and only place limitations on the amount of material the inmate may possess at one time and on the receipt of new materials in the mail.[2] The Magistrate Judge finds that other than his "blanket-ban" claim, the plaintiff

---

[2] In his affidavit, Mr. McKie outlined the penological interests served by the limitations on reading materials and publications in the MSU. The limitations on reading material, which can be lessened to some degree by good behavior, are an important means of maintaining order. By the time an inmate is placed in MSU, there are very few privileges which can be earned or taken away. Behavior management is a legitimate penological objective.

does not claim that he has been denied all religious materials nor that he may not possess a copy of the Qur'an (the central religious book of his faith). Accordingly, the Magistrate Judge concludes that the plaintiff has not met his burden of showing that the regulations in question pose a *substantial burden* on the exercise of his religion, as required under the RLUIPA.

The plaintiff objects to the Magistrate Judge's conclusions and argues that the restrictions in question do impose a substantial burden on his religious exercise. The plaintiff argues that the conduct of the defendants in this case is synomous with actions constituting a substantial burden on his ability to practice his religion. The plaintiff states that he is a Muslim, and as such, there are certain Islamic texts that are "integral" to the practice of Islam. The plaintiff argues that without these religious texts, a Muslim cannot function in his spiritual realm. The plaintiff states that a substantial burden exists because the defendants, through their policy, will not allow the plaintiff to obtain these books through the mail. The plaintiff argues that the Magistrate Judge suggests that there is no burden because the policy in question does not prohibit inmates from possessing other religious material which were already in their possession prior to admission to the MSU. However, the plaintiff contends that under the Magistrate Judge's reasoning, if an inmate is a Muslim and prior to his admission to the MSU he does not have a Holy Qur'an or a Hadith in his possession, but he does have one other religious book, no burden would exist despite the significance of the Qur'an and the Hadith. The plaintiff argues that such a reasoning is "seriously flawed and contrary to all precedent interpreting RLUIPA." The plaintiff submits that "if the policy prohibits him from receiving what he believes to be integral to his faith, a substantial burden exists." The plaintiff further notes that only the religious books, magazines, and newspapers that he is allowed to have in his possession, were already in his possession prior to his

6

admission to the MSU, and he has read those a thousand times over.

This court finds the plaintiff's objections in this regard are without merit. Under the policy in question, MSU inmates are allowed the central book of their faith and may possess other books in numbers appropriate to their classification level. Although the policy in question does not allow the plaintiff to have an unlimited number of religious texts, this court finds that it does not impose a substantial burden on the plaintiff's religious exercise. The court finds that the plaintiff's argument that the policy in question is a "blanket-ban" on religious text is not supported by the record in this case. Furthermore, in the opinion of this court, the plaintiff has not made a showing that the defendants' policy, which prohibits the plaintiff from receiving mail in the MSU, imposes a substantial burden on his religion. Although the plaintiff appears to maintain that the policy in question imposes a substantial burden on his religious exercise because he cannot receive "new" religious literature in the mail, and because he has read the literature he has currently "a thousand times over," this court finds that such does not show that the policy imposes a substantial burden on his exercise of religion.

As noted above, the plaintiff bears the burden of persuasion on whether the challenged policy places a substantial burden on his exercise of religious belief. Only if the plaintiff proves this threshold issue, will the burden shift to the defendants to prove that the imposition of the burden furthers a compelling interest by the least restrictive means. This court finds that the plaintiff has not proven the threshold issue that the policy in question places a substantial burden on his exercise of religion. Therefore, the court concurs with the Magistrate Judge that it is unnecessary to determine whether the regulation in question serves a compelling governmental interest and is the least restrictive alternative to achieving that interest.

It appears to the court that the remainder of the plaintiff's objections with regard to the RLUIPA

deal with the government's burden of proving the imposition of the policy furthers a compelling interest by the least restrictive means. This court will not address the remainder of the plaintiff's objection in this regard, because as stated above, the court finds that the plaintiff has not met his threshold requirement and the burden of persuasion has not shifted to the defendants.

### Qualified Immunity

In the Report, the Magistrate Judge notes that defendants argue they are entitled to qualified immunity from suit in this case because their conduct did not violate any clearly established constitutional or statutory rights for which a reasonable person should have known. The Magistrate Judge concludes that since there has been no violation of a clearly established constitutional or statutory right, the defendants are entitled to qualified immunity.

The plaintiff objects to this finding and argues that there has been a violation of a clearly established right by virtue of the defendants' policy. The plaintiff further argues that the defendants were in a position that they should have known their conduct violated that right.

This court finds the plaintiff's objection in this regard is without merit. As stated above, this court concurs with the Magistrate Judge that there has been no violation of a clearly established constitutional or statutory right. Therefore, this court concurs with the Magistrate Judge's conclusion that the defendants are entitled to qualified immunity.

### Conclusion

After carefully reviewing the Report, objections, pleadings, memoranda and applicable law, the court adopts the Magistrate Judge's Report and Recommendation [Entry # 51] as modified by this Order, and incorporates it herein. The plaintiff's objections to the Report are hereby overruled. Accordingly, the defendants' motion for summary judgment [Entry # 25] is **GRANTED**.

**IT IS SO ORDERED**.

                                                s/ R. Bryan Harwell
                                                R. Bryan Harwell
                                                United States District Judge

March 31, 2006
Florence, South Carolina